Judge Underwood
delivered the Opinion of the Court, in this caso, on the 5th of November last; but a petition for a rehearing having been presented, within the fifteen days allowed for that proceeding, — the final decision of the case was suspended until this day, when the petition for tho rehearing was overruled, and the first Opinion confirmed. •
The nature of the titles involved in the present controversy, may be seen and understood by reading the case of Smith vs. Frost &c., reported in 1 Bibb, 375.
Smith, who was complainant in that case, having died,,his heirs filed their bill against the devisee of Frost (he being also dead,) and others, claiming all the land in the preemption of Blackford, except five hundred acres,’ and praying that partition might be made between them and those claiming under Frost.
The circuit court dismissed the bill, with costs. The correctness of that decision is now questioned.
By the opinion referred to in 1 Bibb, it was settled, that Frost was not bound to yield to the entry of Mos-by, because Craig and Johnson, who were the locators; *145 of that entry, were entitled to half of it, and were bound, out of their half, to make good Blackford’s preemption, which they had previously engaged to locate, for the half, and upon which they had made an elder, invalid entry. That opinion clearly settles the right of Craig and Johnson to half of Mosby’s entry, and gives Frost a lien upon their interest, so far as is necessary to protect him. Speaking of Frost’s equity, the court say, £< Smith cannot pretend ignorance of it when he received a conveyance from Mosby.” In giving to Frost the benefit of the interest held by Craig and Johnson in Mosby’s entry, the court deemed it necessary to declare, that they did not intend to decide, ££ that where one joint tenant sells a part of his joint estate, that the purchaser will, on a partition, be protected in his possession at all events ; the possession of a purchaser, in such a case, especially a.purchaser without notice, would deserve consideration, and ought to be protected if consistent with an equal partition ; but cases might be imagined where it would be inequitable.”
If the proprietor of the valid entry, in such a case, (supra,) could not have justice done him in a division, with the locators, without taking the whole, or part, of the invalid entry, (for which the locators were bound,) then he might prevail a« gainst the party holding under the invalid entry, for so much as would make up his quantity.
There can be no doubt, that, if Smith, shewing, as he did, the superior equity founded on the entry of Mosby, had admitted the right of Frost to avail himself of the protection which the interest of Craig and Johnson, as locators, afforded him; and had then shewn, that to do justice in assigning him his share of Mosby’s entry, it was necessary to take a part of the'land claimed and possessed by Frost, the court would have compelled Frost to surrender as much land as would secure to Smith a moiety in value of Mosby’s entry. Had the case been prepared under that aspect, it would, i(i substance, have been nothing more than an application to the chancellor for partition between Smith, representing Mosby, and Frost, representing the locators, Craig and Johnson. Frost was entitled to half of Blackford’s preemption, and for his protection, was entitled to a lien on the interest of Craig and Johnson in Mosby’s entry. If, therefore, the interest of the locators amounted to as much in value as would cover the half of the preemption claimed by Frost, then it would follow *146 that Smith could get his share of Mosby’s entry without interfering with Frost. The court so decided.
But where the bill, brought by theownerofthe 20.000 acres, to recover the 500, positively avers that the defendants nevei1 held more than the 500, of what the 20.000 included,it must be in ferred,in the absence of proof, that the share of the locators is ample to have justice done, without touching the 500.
F purchases 500 acres, and S 300 acres, of a certain preemption —their purchases independent of each other. ' They both enter upon, possess and hold their respective purchases; but the entry pro ves invalid — their titles bad. S, however, had purchased a paramount title, that covers his own and F’s land ; and files his bill to recover the 500"a-eres, by virtue of his later acquired title: if F, (or those claiming under him,) has had 20 years possession, or an actual residence on the land for 7 years,-the statutes of limitations protect him to the ex-tentofhis claims The doctrine, that where two oceupythesame land, claiming, it under different titles,, the law considers' that he who has the better title has the exclusive possession,, does not apply.
*146 The plaintiffs in error have not brought themselves within the operation of the principle in respect to partition, laid down in the opinion reported in Bibb.— There is not a particle of proof conducing to shew, that the interest of the locators in Mosby’s entry is not sufficient in value to cover all the land claimed by Frost’s devisee &c. in Blackford’s preemption. If that be the case, Smith’s heirs, claiming half of Mosby’s entry by purchase from him,.have no right to go into partition with Frost’s devisee &c. upon the ground that they occupy the attitude of the locators, and that there is a joint estate to be divided. Under this view of the case, the plaintiffs in error have made out no ground for relief. The bill uses this language. “ Of this your complainants are positive, that for more than the quantity of five hundred acres, they (meaning defendants,) have ¡never been in possession &c.” Now, if the possession of the defendants does not exceed five hundred acres, every fact in the record abundantly justifies the inference, that the locators’ moiety of Mosby’s twenty thousand acres entry, was more than sufficient to cover and protect Frost &c. in the enjoyment and possession of that quantity. That Frost &c. are entitkl to a lien on the whole of the locators’ interest, is res adjudícala.
But the bill and pleadings present another ground on which relief is asked. It is alleged, that the deeds to Frost &c. include more land than five hundred acres, (to which extent they were protected by the former opinion of this court,) and the plaintiffs in error, now claiming the whole of Mosby’s entry, so far as it covers the preemption of Blackford, under the locators as well as under Mosby, insist that the defendants should be compelled to surrender and relinquish the surplus to them. Conceding that the plaintiffs are vested with all the equity founded on Mosby’s entry, and that such equity would, if it had been asserted in proper time, have required a decree in their favor for all the land covered by the deeds of the defendants, yet no decree can now be rendered for them, because the defendants *147 •are protected by lapse of time. Both Smith and Frost originally entered irpon Blackford’s preemption, as purchasers of parts thereof — Frost of five hundred acres, Smith of three hundred acres. They did not purchase jointly, or in common. The patentees of Blackford’s preemption conveyed to Frost &c., in severalty, by metes and bounds, and not jointly, or in common, with the plaintiffs, or their ancestor. The defendants have held, for more than twenty years, the actual, continued possession inside of Blackford’s preemption, claiming adversely to the entry of Mosby. They have had more than seven years continued possession, by actual residence, under a deed from the patentees.' They are, therefore, protected against the entry of Mosby, by operation of the statutes of limitation, unless their possession has been converted into an amicable one in consequence of the litigation heretofore carried on and the the decision rendered ; or unless the residence and possession of George S. Smith and his heirs,'within-the bounds of Blackford’s preemption, and likewise within, the bounds of Mosby’s entry, should, in equity, prevent the running of the statute, by conferring on Smith, claiming the paramount equity, the possession in fact of all the land not actually enclosed by Frost and those claiming under him.
The former litigation between the ancestors of the present parties, and the opinion of this court, did not convert the possession of Frost, under Blackford’s preemption, into a friendly possession in respect to the entry of Mosby. Frost, it is true, used the circumstance, that both claims were located by Craig and Johnson, to defend'himself against an asserted equity, which, without that, he could not have defeated. But making such defence did not constitute Frost the tenant, or quasi tenant, of Mosby, or Craig and Johnson. Nor did he thereby look to the perfection of his right, by procuring a relinquishment from them, or either of them, of the equitable title founded on Mosby’s entry. After the termination of the suit, Frost continued to hold, as he had done before, exclusively under the preemption ®f Blackford. His possession was adverse, and he is *148 therefore protected by the statutes of limitation ; unless the residence and possession of Smith and his heirs within the bounds of the preemption, and entry likewise, have the effect of destroying the bar.
Where one relies upon the • fact, that his possession is by actual enclosure, he must 'prove it — it will not be presumed.
The established principles, as to the extent to •which a party acquires posses-ion, by making an entry upon land,laid down, and the authorities cited.
It does not appear, that Smith, or those claiming under him, have had any actual possession within the boundary of the deeds to the defendants. It does not appear, that' there is any part of the land covered by these deeds, unenclosed. It may all have been put under fence more than seven years previous to the institution of this suit, and the possession of the defendants, therefore, may have been by the actual enclosure of every foot of land in controversy. If that be the case, there is no foundation for applying the doctrine laid down by the supreme court in the case of Hunt vs. Wickliffe, 2 Peters, 201. But as the proof of that fact should come from the defendants, if it existed, and there is no such proof; and as we cannot presume, that there was such actual enclosure, it is proper to en-quire, whether Smith’s heirs can, under the circumstances, successfully assert an equity founded on Mos-by’s entry. Frost and Smith both entered originally upon Blackford’s preemption, claiming distinct parcels thereof. After they had thus been in possession, Smith bought an interest in the entry of Mosby. Now, the question is, did the buying of the whole or part of Mosby’s entry (admitted to be valid) by Smith, give him, in equity, possession of all the land inside of the deeds to Frost &c. not actually enclosed by Frost and those claiming under him, so as to prevent the running of the statute of limitations in their favor ? The solution of this question depends upon the nature of the possession of Frost &c. According to the adjudications of this court, their possession was actual, and extended to the limits of their deeds. The quo animo with which an entry is made gives the extent of possession acquired by the entry, where the tenement is vacant at the time of the entry. Thus an elder patentee, who enters on the outside of a junior conflicting patent, with a design not to interfere, does not, by the entry, extend his possession within the junior patent; while the junior pa-> *149 tontee, entering upon the interference, is possessed to the extent of his claim, if his intention was to take possession of the whole; provided the senior patentee had not made a pYevious entry upon some part .of'the elder patent, intending to possess the whole. In that event, the entry of the junior patentee, within the lap, only gives a possession in fact to the extent of the actual enclosure. These doctrines are conclusively settled by the following cases : Calk vs. Lynn’s Heirs, 1 Mar. 347; Fox vs. Hinton, 4 Bibb, 559; Hinton vs. Fox, 3 Litt. Rep. 383; Miller vs. Humphries, 2 Mar. 448; Bodley vs. Coghill’s Heirs &c. 3 Mar. 615. The settlement of a tenant, with a view to take possession of the whole tract, gives such possession to the landlord. Lee vs. McDaniel, 1 Mar. 234. There can be no doubt as to the intention of the defendants in error claiming to the extent of their deeds. A person entering on land under a deed specifying the boundaries, is in possession to the extent of those boundaries, although the person making the conveyance to him had no title. Thomas vs. Harrow, 4 Bibb, 563; Bank of Kentucky vs. McWilliams, 2 J. J. Mar. 257. The settler on land under a bond describing the metes and bounds, acquires an actual possession to the extent of those bounds, whether the obligor had title or not, and the subsequent entry of an adversary patentee upon another part of the land, gives no seizin to such patentee in the land so held by the settler. Smith’s Heirs vs. Lockbridge, 3 Litt. Rep. 20.
Under the foregoing doctrines of the law, it cannot be doubted for a moment, that the defendants in error are actually possessed of the land covered by their deeds. In what way, then, are they to be deprived of the bar resulting from lapse of time, especially when their deeds vest in them the legal title, transmitted from the elder patentees ? If it can be done, it is by supposing that Smith, when he purchased the entry of Mosby, became, ipso facto, an occupant jointly, or in common, with the defendants, or was thereby.vested with an exclusive possession of all the land not actually enclosed by the defendants, or those under whom they claim. The foundation of such a position, if it has any thing *150 to rest upon, is, that Smith, under the principle of the case of Cates vs. Loftus’ Heirs, 4 Mon. 442, shall be presumed to have extended and enlarged his possession by the purchase of Mosby’s entry, in such manner as to embrace all the land not actually enclosed by the defendants, or Frost in his life time ; and having, by such extension and enlargement of his possession, passed the boundary of Frost, that he held thereafter, a sort of joint or common occupancy with, him, so as to allow the application of the doctrine, that where two occupy a house or land, claiming under different, titles, the law considers the entire possession to be exclusively with and in him who has the better right. Tills court, in the case of Hord vs. Bodley, 5 Litt. Rep. 88, determined, that, where the junior patentee had entered and settled within the interference, and afterwards the elder patentee entered upon and improved a part of the interference, with the intention to take possession to the extent of his patent boundary, that, in contemplation of law, the elder patentee must be adjudged to be possessed of the whole tract, but might elect to be disseized for the purpose of trying the title. It should be noticed, that this doctrine was laid down in behalf of the elder patentee, who had a right of entry, and is a strong case, if it does not go too far, to shew the efficacy of the paramount legal title, in conferring actual possession, by operation of law, in behalf of the holder of such title. Suppose the case had been reversed, and the elder patentee had been in possession of the lap, by actual residence, and the junior patentee thereafter entered upon the interference, and improved a part of it : could such an entry, by the junior-patentee, have ousted the elder patentee beyond the extent of the actual enclosure winch the junior patentee might make? Certainly it could not. The case of Miller vs. Humphries, already referred to, settles the point. If an actual entry, therefore, by the junior patentee, could not oust the possession bejmnd the extent of the close made, how can the purchase of an equity, admitted to be paramount, but without any actual entry upon the interference, amount to an occupancy in common, so as to confer the possession in equity upon *151 the holder and purchaser of such paramount equity ? It cannot possibly have that effect. The statute of limitations operates in favor of the possession against a paramount title outstanding, and if it will bar an outstanding legal title, much more will it bar a stale equity. The chancellor applies the bar in equity by analogy. Now, suppose the junior patentee enters and settles on the lap before the elder patentee enters on any part of his tract, and that the elder patentee thereafter enters on his tract, outside of the interference. If, in this state of case, he permits the junior patentee to hold the interference, for seven or twenty years, adversely and continually, by actual settlement, he- cannot recover in an action of ejectment: could he, notwithstanding the bar to his legal right, file a bill in chancery to assert a paramount equity founded on his entry, upon the ground that the entrycovered the interference, and the possession of the junior patentee, and that he had taken possession of the land covered by the entry before the statute had fully run ? Could the idea of his possession under the entry alter his attitude ? Certainly it could not, unless the maxim, that equity follows the law, is disregarded. If the elder patentee, in such a case, would not recover in equity against the junior patentee, without making an actual entry upon the interference before the time prescribed as a bar in the statute had fully run, how can the junior patentee recover when he has made no actual entry upon the interference, when he had no right of entry, and when seven or twenty years has fully run in behalf of the elder patentee settled upon the interference. He cannot recover in such a case, unless the statutes of limitation are disregarded, and all the cases cited are set-aside.
If the plaintiffs and defendants in error were all living within, or possessed by. actual enclosures of parts of the land in contest, then the case would be presented ih which it would be necessary to decide how far the doctrines of the case of Hunt vs. Wickliffe shall be the rule in this court.
Presented as this case now is, it is too late for the plaintiffs to assert an equity founded on Mosby’s entry.
*152 There is no ground for partition between the parties, growing out of their ownership of Blackford’s preetnption. The conveyances made to Frost &c. by the patentees, must stand until impeached for fraud or mistake, or some equitable circumstance not alleged in the present bill. The defendants never held jointly, or in common, with the plaintiffs. Their claims were always in severalty, and hence a bill for partition will not lie.
The decree is affirmed, with costs.