Chief Justice Robertson
delivered the following Opinion
Judge Nicholas concurring — Judge Underwood dissenting^
This is an action of ejectment, in which the defendant succeeded, in consequence of an instruction given by the court to the jury, as to the construction and application of the statute of 1809, for the- speedy adjust-' *349 merit of land claims, and for the protection of actual settlers. '
SíiSettlements on the land, of spactively!’
jllstnlct¡ons ¡„ the circuit ct., <luestum
Doctrines now settled, viz:
1. One who euteredonland, in tending to take possession of the entire tract, no partofwhiohwas then held adversely, is in. possession to the extent of hia claim—
2. An actual possession can be divested, but by an adverse actual entry — . not by a constructive entry, hence, where-there are conflicting claims, and the owner of the inferior enters on, and takes possession of, the lap, a subsequent entry, under the better title, upon the interfering tract, but not the lap, will not oust Him., ■
The plaintiff — claiming, under regular conveyances, an entire tract of land composed of parts of two contiguous grants, each older than that under which the defendant holds, and which covers some portion of the land included by each of the senior patents, within the boundary of plaintiff’s deed — had actually settled within the bounds of his claim, but not within those of the junior patent, before the defendant, or any person under whom he held, had ever settled or entered on the land claimed by him ; and afterwards, the defendant settled upon, and enclosed, more than seven years prior to the institution of this suit, a part of the land witbin the boundary common to the claim of. each party.
Upon these facts, the circuit judge instructed the jury, that, though the defendant had enclosed only a part of the lap, and although a part of his enclosure had not been made seven years, still the statute of 1809 protected him, and barred the plaintiff’s right of entry, to the whole extent of the interference between their claims.
The point presented by that instruction, is the only one we shall now consider.
The following doctrines are too firmly settled by authority, to be now questioned.
First. If a claimant enter upon his land, intending to take possession of the entire tract, no part of which is, at the time of his entry, actually possessed by any other claimant holding adversely to him, he is, by construction and intendment of. law, in the actual possession of all the land included within the boundary of his claim.
Second. If the person making such first entry, hold under the inferior of two conflicting, adverse titles, and enter within the lap, he will not be disseized by a subsequent entry, by a person holding under the superior title, unless that entry be made within the bounds of the inferior claim ; because an actual possession can only be divested by an actual adverse entry — and cannot be *350 disturbed by a merely constructive entry or possession. Fox vs. Hinton, 4 Bibb, 559.
3. Where the holder ofthesup qrior title enters ontholand,tho’ not on the lap, his- possession being, by construction, coextensive with his claim, a subsequent entry, under the inferior title, ousts him so far only, as he is encroached upon by actual enclosures. —And
The foregoing principles apply as well to actual settlers, claimingprotection under the “ seven years law” —act of 1809, as to those protected by the previous acts of limitation.
The actual settler is protected, by the act of 1809, in the title and possession of land of which he has had continued possession, according to the aboveestahlished doctrines,for seven years: but the protection does not extend (o land of which lie has never been so possessed. — His entry and settlement, under an inlfcriortitle, will not, beyond his actual enclosure, oust an adversary who had madeaprior entry, and acquired a constructive possession, under a better title ; nor will the act. protect such subsequent settler’s claim, against such bet ter title, or bar the right of entry, or of action, under it, beyond his actual enclosure. [Judge Underwood is of a different opinion — See his Dissent, post,}
*350 Third. Although the ¡trior entry or settlement, under the superior title, be not within the boundary of the inferior conflicting claim, nevertheless, a subsequent entry or settlement, under the inferior, and within the boundary of the superior claim, will not, beyond the actual dose of the claimant under the inferior right, oust the pre-existent and continuing actual possession, under the superior title ; because, except so far as there is an actual enclosure, the possession of the person subsequently entering, under the inferior claim, could only be constructive, and the prior constructive possession, under the better title, cannot be ousted or disturbed by a subsequent constructive possession, under the inferior claim : there cannot, in fact or in law, be any such constructive entry or possession under the-junior grant, after the entry, and during the continuance, of the actual possession under the paramount title. Millar vs. Humphreys, 2 Mar. 446 ; Moss et al. vs. Currie et al. 1 Dana, 266; Shrieve vs. Summers, 1 Dana, 238.
We can perceive no sufficient reason why those fundamental doctrines of possession, established under tire general statute of limitations which prescribes twenty years as the bar to an action of ejectment, should not be equally applicable under the statute of 1809 — the chief object of which, was only to substitute seven for twenty years, in favor of actual settlers. Thé extent, of the occupant’s actual possession must be determined by the rules and tests just stated ; and he cannot claim to be protected in the enjoyment of land, of which the law does not deem him to have ever been possessed. The act of 1809, properly understood, will, after' an aótual settlement for seven years, protect the settler against a suit for the possession or title of the land, of which he had been possessed, by actual settlement, for seven years ; and not against a suit for the title or possession of land of which he had never been so possessed. Then, in a case on which there was no actual possession beyond the enclosure, the act of 1809 will not bar a suit *351 for the possession or title of land which had not been actually possessed or enclosed, for seven years immediately preceding the institution of the suit. Can the subsequent entry and settlement of a claimant, under a junior patent, be made, by construction, to evict the prior, actual possession of a claimant, also actually settled, within the boundary of his elder patent, and before any settlement was made under the junior patent ? Did the legislature, in enacting the statute of 1809, intend that the subsequent settler, under an inferior claim, should be preferred to a prior settler, under the superior litis ? If any settler should be deemed to be settled and possessed, to the extent of his claim, the first settler, under the best title, should surely be deemed to be settled and possessed to the whole extent of his claim ; and, being the first settler and under' the best title, he should not be postponed, by an anomolous and non-descript species of legal construction, to a subsequent settler under an inferior claim. We know of no principle, or analogy, or authority, for any such novel construction, or inconsistent, application, or rather, as we think, perversion, of the act of 1809. It cannot be material, whether the claim be large, or small. A settler on a large tract, is as much, and as meritoriously, an actual settler to the extent of his whole title, as a settler on a tract ever so small, can be deemed to be on his entire claim. In a contest between two actual settlers, which shall be preferred ? The holder of the belter right, surely.
The actual possession of the elder patentee, first entering, or first settling, within the limits of his grant, wherever he may enter or settle, or however large may be his tract, is, under the act of 1809, precisely what it is under the general limitation law; and the actual possession of the subsequent settler, wherever he may settle, or however small may be his claim, is no more extensive under the operation of the one than the other statute; and nothing short of actual, adverse possession, for seven years, by a settler, any more than by any other claimant, will oust a previous actual possession by the adverse holder óf a better title, or bar his right of *352 entry, or of suit. Whenever the right of entry exists, the correlative” right of suing must also exist. And we cann°t admit that the elder.patentee, who first obtained the actual possession of his entire tract, can be barred from entering on any part of it, by a subsequent settle-. ment under a junior patent, except so far as the settler’s enclosure shall have been continued for seven years. And, in this opinion, we arc, as we believe, sustained, not only by the reason and analogies and objects of the law, but also by the authority of this court.
In Millar vs. Humphreys, 2 Marshall, 448, this court said: — “As the defendants had the elder title, and an entry on-the land was made by their ancestor, prior to any entry having, been made by the plaintiff, or any one under vyhom he claims, upon the tract covered by the interfering patent, it is evident, according to the repeated decisions of this court, that they must he held to be in the actual possession of the interference, except so far as they had been ousted by the plaintiff, or some one under whom he claims.” “The plaintiff, indeed, may have acquired a title to the land enclosed by marks, fifteen years ago, under the act to compel the speedy adjustment of land titles, which forbids all remedy for the recovery of land after an adverse possession of seven years, tinder an interfering claim; but there is no pretence to say, that he could have gained a title to the additional part of the interference enclosed by himself, only about a year before the commencement of the action ” Here, it is not only virtually decided, that an extension of an actual settler’s fence over the line of interference, is an extension of his actual settlement, but it is clearly and expressly decided that, the elder patentee, having entered first, and thus having acquired the actual possession of his entire tract, a subsequent actual settlement by the junior patentee, within the lap, did not oust the prior possession, except so far as the settler’s enclosure had been continued for seven years. And it is evident, that, in that case, this court treated the actual possession, the right of entry, and the right of action, as all depending on the same principles, under fhe statute of 1809, and under the general limitation law. It *353 is true, that the elder patentee had enclosed a small part of the lap; but that circumstance could have no effect on the general principle recognised and applied by the court, in that case ; because the actual possession beyond the enclosure, was only constructive ; and the court de-. cided, that there was “no pretence” for saying that such a constructive possession had been constructively ousted, by the subsequent settlement, under the junior grant.
In Hord vs. Bodley. 5 Litt. Rep. 88, the same principle is even more explicitly and authoritatively established, and directly under the statute of 1809. In that case, it appearing, that Bodlev, claiming under the junior patent, had actually settled within the lap, and that after-wards, Hord had also entered within the boundary common to his and Bodlev’s patents, this court said : — “ To come within the operation of that act, (act of 1809,) it is not onlv necessary, that there should be'-an actual settlement upon the land, by Bodley, under an adverse title to that of Hord, but it is also essential, that there should be a continuation of-the adverse “possession for the time prescribed in the act. But, if we are correct in supposing that, by his entry, Hord acquired the possession of all the land in contest, and that he has never since been ousted of that possession, it is impossible, that Bodley can have held such a continued adverse possession. as to bring his case within,the operation of tho act of 1809 ” Thus placing the extent of the settler’s pro* tection. under the act of 1S09, on the question of actual possession, to be determined, as in all other cases, by the general rules which we have laid down. And, according to inevitable analogy, if those rules applied to that case, they must be applicable to this. For if, as decided, the actual possession, to the whole extent of his claim, acquired hv Bodley’s first entry and his. settlement, was ousted by the inconsistent, constructive possession, acquired by Hord’s subsequent entry, under the better title, on a small part of the land claimed by each, of them, surely Harrison’s prior actual possessiou of his whole tract, under his elder grant could not have been ousted by McDaniel’s subsequent settlement, further' *354 t^an |ie {ia¿¡ extended his actual enclosure; for the rule 0f actual possession by construction, under the elder patent, must operate in the same way in each ease : that is, the constructive possession of the elder patentee, cannot be ousted by the constructive possession of the junior patentee.
A (party who lias title, by a deed, to two adjommg tracts, granted by two sepan^makeTan entry on the P^essmn'Toextensive with ias title by the deed. '
The act of 1809 could never have intended to bar a right of entry, or of action, against an actual settler, unless he had been, for seven years at least, after his first actual settlement, actually possessed of the land as to which the right of entry, or of action, is asserted. It clearly means, we think, that no action shall be maintained, against an actual settler, for land of which he had been, in consequence of his settlement, actually possessed for a period of Seven years prior to the institution of the suit. And such was evidently the interpretation given to the statute by this court, in the cases from which the foregoing quotations have been made.
The extent of the settler’s actual possession, like that of every other claimant, must be ascertained and determined by the general rules of Jaw, when applied to the facts of each particular case.
As then, according to those rules, and the facts of this case, Harrison, and not McDaniel, was, and continued to be, in the actual possession of all the land embraced by his deed, excepting only so much as had been actually enclosed by McDaniel; and as a portion of the enclosed land had not been enclosed as long as seven years before the commencement of this suit, he has, in the judgment of a majority of this court, a right to recover; and McDaniel is protected, by the statute of 1809, only for so much of the land as he had enclosed as long as seven years prior to the institution of this suit.
Although was two pa^ents, we cannot doubt, that, as each of them is older than that under which McDaniel holds, and as Ilarrison enterec^ on) an(* claimed to possess the entire tract included within the boundary described in his deed, possession was undivided, and was coextensive with the limits of his claim, except so far as he had been ac- , , tuaily disseized.
DISSENT, by Judge Underwood •' who i$ of opinion, that where two parties eacii claim a tract of land —the two tracts interfering with each other, and there has been no improvement made upon, nopedispos sessio of, the lap, by the owner of the elder and better title ; and the owner of the junior grant has settled on the lap, and retained an uninterrupted possession for seven years, his title is protected, by the act of 1809 (7 years law) not only as far as his enclosures extend, buttotho wholo interference.
Wherefore, it is the opinion of a majority of the court, Judge Underwood dissenting, that the instruction given to tiie jury by the circuit judge, was erroneous; and therefore, the judgment must be reversed, and the cause remanded for a new trial.