# Madon v. Commonwealth ex rel. Nadler.

December 20, 1946.

James M. Gilbert and Cleon K. Calvert for appellant.

Eldon S. Dummit, Attorney General, and Martin R. Wilson, County Attorney, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This forcible detainer case is by the Commonwealth, on relation of the Assistant Director of the Division of Forestry, against Robert Madon to oust him from the possession of "a one-room lean-to-shack, about 8 by 14 feet," located in the Kentucky Ridge Forest in Bell County. He was found guilty both in the court of a Justice of the Peace and the Circuit Court.

The Commonwealth proved that it had leased for preservation and development a boundary of 11,886 acres of mountain land from the United States Government for a period of 50 years from June 13, 1939. The Government acquired title on April 2, 1937, to 2,868 acres embracing the property involved in this action, from a successor-assignee of the Louisville Property Company. The area had been marked by permanent monuments and enclosed by a strand of wire as a fence. The shack occupied by the defendant is within a separated area of 9,200 acres and some distance from the buildings and trails constructed by the State.

The defendant had rented the shack in the midst of an acre or more of cleared land from Gentry Mason, who erected it in August, 1943, on a tract of 200 acres inherited by him from his mother, Angeline Mason, who acquired title in 1890 by a patent from the Commonwealth. At the time or soon thereafter the boundary was enclosed by a fence and well marked. It seems, however, that there was no actual occupation of any part of the land other than to clear a bit of it until this shack was built.

We have a notion that this shack and its occupancy were intended as a decoy to lure the Commonwealth into suing in ejectment in order to try title under the idea that Mason could not maintain a suit against the State. Instead the action of forcible detainer was instituted. About the time this judgment was rendered in the Circuit Court, without the intervention of a jury, the General Assembly passed a resolution authorizing the heirs of Angeline Mason, deceased, to sue the Commonwealth to determine the title to the 200 acres. Acts of 1946, page 723.

Title to land is not determined in an action of forcible detainer, and ordinarily an issue concerning it is not relevant, the question alone being whether the defendant

is depriving the complainant of possession to which he is entitled. Conley v. Shepherd, 237 Ky. 128, 35 S. W. 2d 5. So this case can have no effect on the question of title. However, the title is or may be a relevant inquiry to determine the right of possession or its extent. A forcible entry and detainer can be made only where there is an existing, actual possession. New York-Kentucky Oil & Gas Co. v. Miller, 187 Ky. 742, 220 S. W. 535. As is said in Richie v. Owsley, 137 Ky. 63, 121 S. W. 1015, 1016:

"It is not competent to try the title in this character of proceeding, but because of the peculiar situation, the fact of where the legal title was then vested is material, indeed is necessary, to be ascertained, as upon it alone depends the question, one of mixed fact and law, whether Owsley was in actual possession of the premises when Richie entered. * * *.

"An actual possession of land in this state may be acquired, either by a physical inclosure of the whole boundary, or by an inclosure of a part of the boundary under a claim of title to the whole, if no one else is asserting title to any part of the boundary upon which he has so entered. If he enters under a paper title, the paper may be looked to as showing the extent of his claim and possession; or, if he enter without a paper, but claiming to a marked boundary, that fact may be shown as indicating the extent of his possession. But there are certain limitations upon the rule just announced. If the entrant goes upon a boundary under a junior patent, which latter is entirely or partly within a senior grant or survey, he will be deemed to be in the actual possession of only so much of the land as he actually incloses, if the owner of the senior grant is then in the actual possession of his boundary; or, if the owner of the senior grant be not in the actual possession of the boundary in his grant, but enters thereon before the patentee of the junior grant has ripened a title by adverse possession, the latter will ipso facto be restricted to his actual close."

The last clause of the above is explained in a modification of the opinion, Id., 143 Ky. 1, 135 S. W. 439, as applying the rule where a senior patentee settled within the lap of a junior patent.

In this case, the Forestry Division of the State went no farther back in establishing title and the extent of its occupancy than 1937, while the defendant, whose possession was that of his landlord, established title to the property in his landlord back to the Commonwealth's patent of 1890, all of which was included in the boundary subsequently fenced in by the Division. In the beginning of our land law the court declared there is no difference in principle "between the case of a possession acquired under a junior patent and a possession obtained under a deed with a definite boundary, which was made by one having no title." Thomas v. Harrow, 7 Ky. 563, 4 Bibb 563. So that with respect to the matter of the extent of possession, the defendant in this case may be regarded as having it under a senior grant. We, therefore, have the Forestry Division in the position of claiming possession under color of title of a junior patent. It had never at any time taken actual possession or actually occupied in such a way as would ripen into title by adverse possession the spot where this shack was erected, or the clearing upon which it is located. It is perhaps three miles from any development within the Park boundary. See Interstate Inv. Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468. But the defendant, as representative of his landlord, had first moved in and was in physical occupancy. The controversy in Richie v. Owsley, supra, revolved around a similar question, that is, whether one patentee had reduced to actual occupancy a part of the land claimed by another patentee who had actually occupied the land to such an extent that it would have ripened title to the overlap by adverse possession, and he was held to be entitled to it.

We are of opinion, therefore, that the court should have adjudged the defendant not guilty of forcible detainer. We repeat, no question of superiority of title is involved.

The judgment is reversed.